IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CATHERINE CALLOWAY and<br>MICHAEL CALLOWAY, | * |
| | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| GREEN TREE SERVICING, LLC | * |
| | * |
| Defendant. | * |
| | * |
| | * |

CIVIL ACTION-COMPLAINT

Plaintiffs Catherine Calloway and Michael Calloway, by and through their

attorney, Maggie Clausell, hereby bring this Complaint against Defendant Green

Tree Servicing, LLC, and in support, aver the following:

## I. INTRODUCTION

1.    Plaintiffs bring this action for damages based upon Defendant's violation

of the Fair Credit Reporting Act (herein after referred to as "FCRA"), 15 U. S. C. §

1681 *et. seq.*, and claims under Delaware law.  Plaintiffs seek actual damages,

punitive damages, costs and attorneys fees.

## II.    JURISDICTION

2.     This court has subject matter jurisdiction over this Complaint pursuant to

FCRA, 15 U. S. C. § 1681 *et. seq.* and  28 U. S. C. § 1331.

3.    Jurisdiction lies over state law claims based on the principles of

supplemental jurisdiction as codified at 28 U. S. C. §1367.

1

### III.    VENUE

4.    All of the claims herein arose within the jurisdiction of the United States District Court of Delaware.  Venue is proper in the District of Delaware pursuant to  15 U. S. C. §1681p and 28 U. S. C. §1391.

### IV.    PARTIES

5.     Catherine and Michael Calloway, are adult individuals, husband and wife, who are both residents of the State of Delaware, residing at 514 King Street, Laurel DE 19956.

6.    Green Tree Servicing, LLC   (hereinafter, Green Tree) is a corporation organized under the laws of the State of Delaware whose principal place of business is 332 Minnesota Street, St. Paul, MN 55101, whose registered agent is The Corporation Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, engaged in the business of servicing mortgage loans within the meaning of 12 U.S.C. 2605(i)(3).  Green Tree is a "servicer" within the meaning of 12 U. S. C. 2605 (i)(2).

### V.  STATUTORY STRUCTURE

### A. FAIR CREDIT REPORTING ACT

7.    The Fair Credit Reporting Act (FCRA) 15 U. S. C. §1681 *et seq.* was enacted to require the consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  15 U. S. C. § 1681 (b).

8.    Under the FCRA , whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum accuracy of the information concerning the individual about whom the report relates.  15 U. S. C. §1681 e (b).

9.    Under the FCRA, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of dispute from the consumer.  15 U. S. C. §1681 i(a)1.

10.    Under the FCRA, a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or consciously avoids knowing that the information is inaccurate.  15 U. S. C. §1681s-2(a)(1)(A). Moreover, once a subscriber has been notified that specific information is inaccurate and the information, in fact, turns out to be inaccurate, that information must be deleted and suppressed and cannot continue to be furnished.  If the furnisher-subscriber determines that information it has reported is inaccurate or incomplete, the furnisher has a duty to notify, retract, and correct its prior reports to all agencies to whom it subscribes and to correct its own internal records.

11.    Under the FCRA, a person who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and has

furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate (15 U. S. C. § 1681s-2(a)(2).

12.    The FCRA expressly provides consumers with a private cause of action; violation of 15 U. S. C. §16812s-2 are enforceable and actionable via 15 U. S. C. §1681n and 15 U. S. C. §1681o, depending on whether the violation is willful or merely negligent.

13.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer, is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 or more than $1000; such amount of punitive damages as the Court may allow; and the costs of the action together with reasonable attorney's fees. 15 U. S. C. § 1681n.

## VI.    FACTS

14.    Plaintiffs are the current record owners of the Property at 514 King Street, Laurel, DE 19956, as evidenced by the deed recorded with the Recorder of Deeds for Sussex County Delaware at Book 1206, Page 261, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "A".

15.     Plaintiffs executed a mortgage with Green Tree Financial Services (hereinafter, "GTFS") on or about October 9, 1996.  A copy of the Mortgage is attached hereto and incorporated herein as Exhibit "B".

16.     On October 9, 1996 Plaintiffs executed a note with Green Tree Financial Services, agreeing to pay $125,000 plus interest.  A copy of the Note is attached hereto and incorporated herein as Exhibit "C".

17.     The monthly payment and interest was $1285.98, with the first payment due on November 14, 1996.

18.     Plaintiff commenced payments under the terms of the note and mortgage on November 14, 1996.

19.     Green Tree Mortgage, LLC , a subsidiary of GTFS, serviced the note from October 11, 1996  to 1999 when Conseco Finance Servicing Corporation (hereinafter, "Conseco") began servicing the loan.

20.     Conseco serviced the loan from 1999 to June 2003.

21.     Conseco Finance Corporation filed bankruptcy in 2003.  Green Tree Servicing, LLC acquired servicing rights to Plaintiffs' mortgage on or about June 22, 2003 through a §363 bankruptcy asset sale.

22.     Plaintiffs' claims in this complaint arose after the 2003 sale by Conseco.

23.     At all times Defendant acted through its authorized agents and employees.

24.     In 1996, Plaintiffs' mortgage account number assigned by Green Tree Financial Services was 10000156.

25.     From 1997 to a point in 2005, Plaintiffs' mortgage account number was 6700107318.

26.    From some point in 2005 to date, Plaintiffs' assigned mortgage account number was changed to 88037954.

27.    Plaintiffs subsequently learned that Defendant was reporting both account number 6700107318 and account number 88037957 as separate trade lines to credit reporting agencies as active accounts with balances.

28.    As of November 10, 2007, the Plaintiffs' Trans Union report contained the following trade-lines (Exhibit D):

A)    Green Tree #88037954, installment account with a balance of $92613, opened 10/1996.

B)    Green Tree #6700107318, mortgage account with a balance of $93027, opened 10/1996

29.    These trade-lines contained inaccurate credit information in that account number 6700107318 had been changed to account number 88037954 and Plaintiffs' liability to Green Tree was significantly less than $185,640.00, the sum of the two account balances.

30.    These trade-lines contained inaccurate credit information in that account number 88037954 is a mortgage account, not an installment loan as reported.

31.    On or about October 1, 2007, pursuant to 15 U. S. C. §1681i, Plaintiffs disputed the accuracy of the information by requesting that the credit reporting agencies, Trans Union, Equifax, and Experian correct the error on their credit report.  The Plaintiffs' request specifically stated that account number #6700107318 should show a balance of $0 and that account number 88037954 was a mortgage account (Exhibit E).

32.    Trans Union subsequently responded to this request from Plaintiff by requesting verification of the trade-lines by Green Tree, which furnished the information to Trans Union.

33.    Defendant falsely verified the false reporting of the two disputed account numbers to Trans Union.

34.    On or about November 10, 2007, Trans Union responded to the Plaintiffs request for reinvestigation of the disputed accounts with inaccurate information as verified (Exhibit F).

35.    The inaccurate information remains on Plaintiffs' credit reports.  As of August 18, 2008, the Plaintiffs' Trans Union report contained the following trade-lines (Exhibit G):

A)    Green Tree #88037954, installment account with a balance of $88,171, opened 10/1996, updated 7/2008.

B)    Green Tree #6700107318, mortgage account with a balance of $90874, opened 10/1996, verified 1/2008.

36.    The inaccurate trade-lines were maintained on the Plaintiffs' report based on Defendant's false verification in response to the request for reinvestigation.

37.    Plaintiffs' creditworthiness has been compromised by the actions and omissions of the Defendant.

38.    Defendant's false reporting has the effect of increasing the cost of credit available to the Plaintiffs.

39.    Defendant's false reporting has the effect of increasing the cost of credit available to the Plaintiffs.

40.    Defendant's false reporting has the effect of reducing the availability of credit to the Plaintiffs.

41.    As a result of the misleading and inaccurate information reported by the Defendant, the Plaintiffs have suffered actual damages, including financial damages and emotional distress.

## VII.  CAUSES OF ACTION

42.    Defendant has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comport with FCRA, 15 U.S.C. §1681s-2(b).

43.    Defendant was required under FCRA, 15 U.S.C. §1681s-2(b) to respond to the request for reinvestigation by the Plaintiffs by completing a diligent inquiry into the facts underlying the trade-lines and providing accurate information to the credit reporting agencies regarding those trade-lines.

44.    Defendant's reinvestigation included the following duties and was required to meet the following standards:

a)    to include a review of all information provided to it by the credit reporting agency;

b)    To be conducted in good faith;

c)    To be conducted in such a fashion as to assure the maximum possible accuracy of the Plaintiffs' credit reports;

d)    To be conducted in such a way as to not to violate any of the general prerequisites for Defendant's conduct under FCRA, 15 U.S.C. §1681s-2(a) or any other statutory requirements for furnishers of credit information;

e)    To be conducted in a reasonable fashion; and

f)    To be conducted based on a review of all information reasonably available to Green Tree.

45.    Following the reinvestigation, Defendant reported the erroneous credit information with actual knowledge of errors, in violation of FCRA, 15 U.S.C. §1681s-2(b) and the general duties implied all conduct of furnishers under FCRA,

46.    Following the reinvestigation, Defendant reported the erroneous credit information and consciously avoided knowing that the credit information was inaccurate, in violation of FCRA, 15 U.S.C. §1681s-2(b) and the general duties implied to all conduct of furnishers under FCRA, 15 U.S.C. §1681s-2(a))1)(A).

47.    Following the reinvestigation and dispatch of notice directly to Defendant at its designated address, Defendant Green Tree reported credit information that was in fact not accurate, in violation of the FCRA, 15 U.S.C. §1681s-2(b) and the general duties implied to all conduct of furnishers under FCRA, 15 U.S.C. §1681s2(a)(1)(A).

48.    Following the reinvestigation and dispatch of notice directly to Defendant, Defendant Green Tree failed to notify the consumer reporting agencies to whom it reported that the accounts were in dispute in violation of FCRA, 15 U.S.C. §1681s-2(b) and the general duties implied to all conduct of furnishers under FCRA, 15 U.S.C. §1681s-2(a)(3).

49.    Defendant's Green Tree's reinvestigation was not conducted in good faith.

50.    Defendant's Green Tree's reinvestigation was not conducted in such as a way as to insure the maximum possible accuracy of the Plaintiffs' consumer reports.

51.    Defendant Green Tree's reinvestigation was not conducted reasonably.

52.     Defendant Green Tree's reinvestigation was not conducted using all information reasonably available to Green Tree.

53.     Defendant Green Tree's reinvestigation was per se deficient by reasons of these failures of Green Tree in its reinvestigation of the disputed trade-lines on the Plaintiffs' consumer reports.

54.     Green Tree action in violating the FCRA, 15 U.S.C. §1681s-2(b) constituted willful and/or negligent non-compliance with the FCRA, and entitles the Plaintiffs to actual damages enumerated in 15 U.S. C. § 1681o and/or 15 U.S. C. § 1681n.

55.     Defendant Green Tree has defamed Plaintiffs by publishing misleading and/or inaccurate information to third parties information regarding their creditworthiness.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Catherine Calloway and Michael Calloway pray that the Court grants the following relief as against the Defendant:

1.     For Compensatory Damages

2.     For Statutory Damages

3.     For Punitive Damages

4.     For Attorney's Fees and cost incurred in this action; and

5.     For such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a Trial by jury on all Issues.

This 24th day of August 2008.


                          LAW OFFICE OF MAGGIE CLAUSELL, LLC,

                                    /s/ Maggie Clausell

                                    Maggie Clausell, Esq.
                                    DE Bar ID #4532
                          9 E. Loockerman Street, Ste. 205
                                    Dover, DE 19901
                                    302-678-7644 (voice)
                                    302-678-0771 (fax)

DATED:  August 24, 2008

# EXHIBIT A

5302

вого1206 раск 261

# This Deed, Made this _____ 30th \_\_\_\_\_

_____ day of _____ August _____ in the year of our

Lord one thousand nine hundred and eighty-three,
BETWEEN FRANCES P. HASTINGS and ELLEN P. LANDON, of 123
Sharptown Road, Laurel, Delaware, 19956, parties of the first part,

– A N D –

MICHAEL B. CALLOWAY and CATHERINE L. CALLOWAY, his
wife, of 514 King Street, Laurel, Delaware, 19956, parties of the second
part.

**Witnesseth.** That the said parties of the first part, for and in consideration of
the sum of TWELVE THOUSAND AND NO/100 DOLLARS ($12,000.00)
Current Lawful Money of the United States of America and other good and valuable considerations,
the receipt whereof is hereby acknowledged, hereby grant    and convey    unto the said parties
of the second part, their heirs and assigns:

ALL that certain lot, piece, or parcel of land lying and being
situate in the Town of Laurel, Little Creek Hundred, Sussex County, State
of Delaware, lying on the Northwest side of King Street adjoining lands
now or formerly of Ellen P. Landon, lands now or formerly of Elsie W.
Palmer and lands now or formerly of James E. Young, Jr., and being more
particularly described as follows, to wit:

BEGINNING at a pipe set on the Northwesterly right-of-way line of
King Street, said pipe being a corner for the lands herein and lands now
or formerly of James E. Young, Jr. and being situate 740 feet more or
less from the right-of-way of 4th Street; thence along and with the
Northwesterly right-of-way line of King Street and the line of the lands
herein, South 32 degrees 40 minutes 00 seconds West 50 feet to a concrete
monument, said concrete monument being a corner for the lands herein and
lands now or formerly of Ellen P. Landon; thence turning and running
along and with the line of the lands herein and lands now or formerly of
Ellen P. Landon, North 57 degrees 20 minutes 00 seconds West 200 feet to
a concrete monument; thence turning and running along and with the line of
lands herein and lands now or formerly of Elsie W. Palmer North 32
degrees 40 minutes 00 seconds East 50 feet to an axle, said axle being a
corner for the lands herein and lands now or formerly of James E. Young,
Jr.; thence turning and running along and with the lands herein and
lands now or formerly of James E. Young, Jr., South 57 degrees 20 minutes
00 seconds East 200 feet to a pipe on the Northwesterly right-of-way of
King Street being the point and place of beginning and said to contain
10,000 square feet of land more or less together with all improvements
thereon.  The description herein was derived from a survey prepared by
Hiller-Lewis, Inc., Registered Land Surveyors, on August 1, 1983.

BEING all of the same lands devised unto Frances P. Hastings, one
of the above-named Grantors herein, by Article X of the Last Will and
Testament of Howard J. Penuel, which is filed for record in the Office
of the Register of Wills, in and for Sussex County, at Georgetown, Delaware,
in Will Book 84, page 580.  The said Howard J. Penuel died testate on
or about March 30, 1977.

ALSO BEING a part of the same lands devised unto the Grantors herein,
Frances P. Hastings and Ellen P. Landon, by Article XIII of the Last Will
and Testament of Howard J. Penuel which is filed for record aforesaid, in
Will Book 84, page 580.

LAW OFFICES
PRUNELL & HASTON
GEORGETOWN, INC.



BOOK 1206 PAGE 262

LANDS OF
ELBIE W. MELSER
H50/80

LANDS TO BE CONVEYED TO

MICHAEL S. & CATHERINE L. CALLOWAY

TOWN OF LAUREL
LITTLE CREEK HD.,  SUSSEX COUNTY,
STATE OF DELAWARE
SURVEYED BY: MILLER
LEWIS, INC.
SEAFORD, DE.
DRAWN BY: D.G. MILLER
AUG. 1, 1983

3-32-1.07-316

□ CONC. MON. (SET)

"THIS PLATTED AREA
IS NOT WITHIN THE
JURISDICTION OF THE
COUNTY   PLANNING
AND ZONING COMMIS-
SION  P.N.T.
8/30/83"

BOOK 1206 PAGE 263

**In Witness Whereof,** the said parties    of the first part ha ve    hereunto

set their    hands    and seals    , the day and year aforesaid.

Signed, Sealed and Delivered
in the presence of:

_Frances P. Hastings_ (SEAL)
Frances P. Hastings

_Ellen P. Landon_ (SEAL)
Ellen P. Landon

Witness

Witness

State of Delaware
STATE TRANSFER DEPT. · · · SUSSEX
EIGHTY
FRANCHISE    2 4 0.00
TAX

PURCHASERS HEREIN MADE
this 31st DAY OF August, 1983
ASSESSMENT DIVISION OF SUSSEX COUNTY

STATE OF DELAWARE    } SS.
COUNTY OF SUSSEX

BE IT REMEMBERED, That on this
30th day of August in the year of our LORD, one thousand nine
hundred and eighty-three personally came before me, The Subscriber, a Notary
Public for the State and County aforesaid, FRANCES P. HASTINGS and ELLEN P. LANDON

Parties to this Indenture known to me personally to be such, and they
acknowledged this Indenture to be their    Deed
GIVEN under my Hand and Seal of Office, the day and year aforesaid.

RECEIVED
MARY ANN LAYFIELD

1983 AUG 30  PM 3:13

RECORDER OF DEEDS
SUSSEX COUNTY

LAW OFFICES
TUNNELL & RAYSOR
GEORGETOWN, DEL.

_Elizabeth A. Sharp_
NOTARY PUBLIC

# EXHIBIT B

WHEN RECORDED RETURN TO:
GREEN TREE FINANCIAL SERV CORP
34387 PLYMOUTH
LIVONIA, MI  48150

Parcel Identification Number
Present: ......................................................
Previous: ......................................................

Name and Address of Preparer
  KELISHA V HAYES
  34387 PLYMOUTH RD
  LIVONIA, MI  48150

--------------------- [Space Above This Line For Recording Data] ---------------------

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on ..........OCTOBER..9,..1996...................... . The mortgagor is .MICHAEL..S..CALLOWAY,..A..MARRIED..MAN..AND..CATHERINE..L..CALLOWAY,..A..MARRIED..WOMAN............

.............................................................................................................................................
("Borrower"). This Security Instrument is given to ...GREEN..TREE..FINANCIAL..SERVICING..CORPORATION............
..................................................... , which is organized and existing under the laws of .STATE..OF..DELAWARE
................................................................................................................ , and whose address is

.332..MINNESOTA..STREET...SAINT..PAUL,..MN...55101.....................................................................
("Lender"). Borrower owes Lender the principal sum of .ONE..HUNDRED..TWENTY-FIVE..THOUSAND..DOLLARS..AND
.NO/100================================== Dollars (U.S. $.125,000.00................). This debt is evidenced
by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the
full debt, if not paid earlier, due and payable on ........OCTOBER..14,..2016................. . This Security Instrument secures
to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications
of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in ..............SUSSEX........................................................................ County, Delaware:

SEE ATTACHED LEGAL DESCRIPTION

which has the address of ........514..KING..ST..................................................... , ........LAUREL........................ ,
                                                        [Street]                                                                    [City]

Delaware ....19956............... ("Property Address");
                    [Zip Code]

DELAWARE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3008 9/90 (page 1 of 6 pages)

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE  2/18/91

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which

Form 3008 9/90 *(page 2 of 6 pages)*

may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage

Form 3008 9/90  *(page 3 of 6 pages)*

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default or any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the

Form 3008 9/90 *(page 5 of 6 pages)*

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-OE 2/18/91

default is not cured on or before the date specified in the not......der at its option may require immediate payment in full of all sums secured by this Security Instrument with..... further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees of ........N/A........ % of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of title evidence.

**22. Satisfaction.** Upon payment of all sums secured by this Security Instrument, Lender shall cause the entry of satisfaction to be made upon the records of this Security Instrument without charge to Borrower. Borrower shall pay all costs and fees for entering the satisfaction upon the records of this Security Instrument.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were part of this Security Instrument. [Check applicable box(es)]

- [ ] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] Other(s) [specify]

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider

- [ ] 1–4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

.................................................... ........................................................ (Seal)

MICHAEL S CALLOWAY                    —Borrower

Social Security Number ........................................................

.................................................... ........................................................ (Seal)

CATHERINE L CALLOWAY                    —Borrower

Social Security Number ........................................................

———————— [Space Below This Line For Acknowledgment] ————————

STATE OF DELAWARE, ............SUSSEX........................... County ss:

BE IT REMEMBERED that on this ......9th........................ day of ....OCTOBER, 1996.............. ........................, personally came before me, the subscriber, Michael S. Calloway and Catherine L. Calloway.........................., part ies............................. to this Mortgage personally known to me to be such, and severally acknowledged this Mortgage to be ..........their............... ....................... act and deed.

Given under my Hand and Seal of Office, the day and year aforesaid.

........................................................
Notary Public

....John E. Hyde, Attorney at Law..............
Name and Title of Notary

....Indefinite..............
Expiration Date

BANKERS SYSTEMS, INC., ST. CLOUD, MN 56302 (1-800-397-2341) FORM MD-1-DE 2/18/91

Form 3008 9/90 *(page 6 of 6 pages)*

# EXHIBIT C



**GREEN TREE**
MORTGAGE                SERVICES
*A Division of Green Tree Financial Servicing Corporation*

10/14/96

MICHAEL CALLOWAY
514 KING STREET
LAUREL, DE 199560000

RE:    Loan # 10000156
       Subject Property: 514 KING STREET
                         LAUREL, DE

Dear MICHAEL CALLOWAY / CATHERINE L. CALLOWAY

Green Tree Mortgage Services, of Rapid City, South Dakota, is pleased to welcome you as our new mortgage loan customer. We are servicing your loan which originated in our Livonia office.

Our records show that the current terms of your loan are as follows:

| | |
|---|---|
| Principal balance: | $125,000.00 |
| Payment amount (principal & interest): | $1,285.98 |
| Due date of first payment: | 11/14/96 |

If your records disagree with the above information, please contact our Mortgage Service Center at the toll free number listed below.

We will be experiencing a transition of the servicing of your loan, however, until further notification, please forward all monthly payments to the following address:

GreenTree Mortgage Services
P.O. Box 6150
Rapid City, SD 57709

We will be sending you a monthly statement. If your statement does not arrive prior to your first due date, please remit your payment to the above address and reference your loan number on your check or money order.

Should you have any questions regarding any of the above, please contact our customer service department at the above address, or call 1-800-330-5183, 8:00am - 6:00pm Central Standard Time. Again, we welcome you to GreenTree Mortgage.

Sincerely,
Customer Service Department
Green Tree Mortgage Services

612 - 293 3434   1-800 220-6489

MICHAEL S CALLOWAY
CATHERINE L CALLOWAY

514 KING ST
LAUREL, DE 19956

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, joint and severally.

Servicing Corporation
332 Minnesota Street
Saint Paul, MN 55101

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

Loan Number _____
Date __10/09/96__
Maturity Date __10/14/16__
Loan Amount $ __125000.00__
Renewal Of _____

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of

One Hundred Twenty Five Thousand and 00/100 _____ Dollars $ __125000.00__

☒ **Single Advance:** I will receive all of this principal sum on __10/14/96__ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
   I will receive the amount of $ _____ and future principal advances are contemplated.

   **Conditions:** The conditions for future advances are _____

   ☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
      all other conditions and expires on _____

   ☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __10/14/96__ at the rate of __10.950__ %
per year until __10/14/16__ .

☐ **Variable Rate:** This rate may then change as stated below.

   ☐ **Index Rate:** The future rate will be _____ the following index rate: _____

   ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

   ☐ **Frequency and Timing:** The rate on this note may change as often as _____
      A change in the interest rate will take effect _____ % or less than

   ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____
      _____ %.

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
   ☐ The amount of each scheduled payment will change.        ☐ The amount of the final payment will change.
   ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a __30/360 simple interest__ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
   ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
   ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than __15__ days after it is due, I agree to pay a late charge of __5% OF UNPAID AMT__

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount
   above: _____

**PAYMENTS:** I agree to pay this note as follows:

   ☐ **Interest:** I agree to pay accrued interest _____

   ☐ **Principal:** I agree to pay the principal _____

   ☒ **Installments:** I agree to pay this note in __240__ payments. The first payment will be in the amount of $ __1285.98__
      and will be due __11/14/96__ . A payment of $ __1285.98__ will be due
      __14th day of each month__ thereafter. The final payment of the entire
      unpaid balance of principal and interest will be due __10/14/16__ .

**ADDITIONAL TERMS:**

888 - 316 - 8733
ATTN Steffani
Tuy

1 800 - 330 - 6183

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96_____, between the Creditor named below and __MICHAEL S CALLOWAY__ and __CATHERINE L CALLOWAY_____ (Consumer(s)).

### NOTICE OF RIGHT TO CANCEL

**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

__Green Tree Financial Servicing Corporation__
                    (Name of Creditor)
__34387 PLYMOUTH_____
__LIVONIA, MI  48150_____
                    (Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __10/11/96_____
                                        (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____     _____
Consumer's Signature              Date

---

### RECEIPT

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at _____ __514 KING ST  LAUREL DE 19956_____

Consumer(s):

Date _____

X _____
  MICHAEL S CALLOWAY

X _____
  CATHERINE L CALLOWAY

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96__ , between the Creditor named below and __MICHAEL S CALLOWAY__ and __CATHERINE L CALLOWAY__ (Consumer(s)).

**NOTICE OF RIGHT TO CANCEL**

**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is ____ __October 9, 1996__ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/ security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

__Green Tree Financial Servicing Corporation__
(Name of Creditor)
__34387 PLYMOUTH__
__LIVONIA, MI  48150__
(Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __10/11/96__ (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____   _____
Consumer's Signature                          Date

**RECEIPT**

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at _____ __514 KING ST  LAUREL, DE  19956__              Consumer(s):

Date _____

X _____
MICHAEL S CALLOWAY

X _____
CATHERINE L CALLOWAY

APPLICANT'S NAME AND CURRENT ADDRESS

MICHAEL S CALLOWAY
CATHERINE L CALLOWAY
514 KING ST
LAUREL, DE 19956

APPLICATION SUBMITTED TO
(AND THESE DISCLOSURES MADE BY):
GREEN TREE FINANCIAL SERV CORP
332 MINNESOTA ST.
ST. PAUL, MN 55101

Application
Received _____
By [ ] Mail [ ] In Person
Date of
Disclosure _____

## SERVICING DISCLOSURE STATEMENT

NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone numbers of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. §2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

A. [X] We may assign, sell or transfer the servicing of your loan while the loan is outstanding.
   We are able to service your loan, and we [X] will [ ] will not [ ] haven't decided whether to _____ service your loan.

B. [ ] We do not service mortgage loans [ ] and we have not serviced mortgaged loans in the past three years). We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer

C. [ ] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program for which you have applied, we expect to [ ] sell all of the mortgage servicing [ ] retain all of the mortgage servicing [ ] assign, sell or transfer
   _____ % of the mortgage servicing.

D. [ ]

2. For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

   __X X__ 0 to 25% _____ 26 to 50% _____ 51 to 75% _____ 76 to 100%

   This estimate [X] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. A. [ ] We have previously assigned, sold, or transferred the servicing of first lien mortgage loans.

   B. [X] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past three years. The percentages have been rounded to the nearest quartile - 0%, 25%, 50%, 75% or 100%.

   __0__ __25__ %   __0__ __25__ %   __0__ __25__ %

   (This information [X] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries.)

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/we have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/we understand that this acknowledgment is a required part of the mortgage loan application.

APPLICANT   MICHAEL S CALLOWAY

CO-APPLICANT   CATHERINE L CALLOWAY

DATE

(page 1 of 1)

Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form RESPA-SDS 6/27/95

| | | |
|---|---|---|
| Green Tree Financial Servicing Corporation 332 Minnesota Street Saint Paul MN 55101 | MICHAEL S CALLOWAY CATHERINE L CALLOWAY 514 KING ST LAUREL, DE 19956 | Loan Number _____ Date __October 9, 1996 Maturity Date October 14, 2016 Loan Amount $ __125000.00 |
| LENDER'S NAME AND ADDRESS | BORROWER'S NAME AND ADDRESS | |

## NOTICE TO BORROWER
## OF PROPERTY IN SPECIAL FLOOD HAZARD AREA

Property Description: 514 KING ST  LAUREL DE 19956 _____

Flood Map Information: AS INDICATED IN APPRAISAL OF SUBJECT PROPERTY
LOCATED IN FLOOD ZONE C
MAP NO. #100040 0001B          DATE :01/16/81

*Complete either Box A or Box B, whichever is applicable.*

A.  [X]  The improved real estate or mobile home described above has not been determined to be located in a special flood hazard area.

B.  [ ]  Notice is hereby given to _____ that the
                                                        *(Borrower)*
improved real estate or mobile home described above is or will be located in an area designated by the Director of the Federal Emergency Management Agency or by the Secretary of the Department of Housing and Urban Development as a special flood hazard area. This area is delineated on _____ 's Flood Insurance Rate
                                                                                    *(Community Name)*
Map (FIRM) or, if the FIRM is unavailable, on the Flood Hazard Boundary Map (FHBM). This area has at least a 1% chance of being flooded within any given year. The risk of exceeding the 1% chance increases with time periods longer than one year. For example, during the life of a 30-year mortgage, a structure located in a special flood hazard area has a 26% chance of being flooded.

## NOTICE TO BORROWER
## ABOUT FEDERAL FLOOD DISASTER RELIEF ASSISTANCE

*(Lender Check One)*

[ ]  Notice in Participating Communities
The improved real estate or mobile home securing your loan is or will be located in a community that is now participating in the National Flood Insurance Program. If the property is damaged by flooding in a federally declared disaster, Federal disaster relief assistance may be available. However, such assistance will be unavailable if your community has been identified as a flood-prone area for one year or longer and is not participating in the National Flood Insurance Program when the assistance is approved. This assistance, usually in the form of a loan with a favorable interest rate, may be available for damages incurred in excess of your flood insurance.

[ ]  Notice in Nonparticipating Communities
The improved real estate or mobile home securing your loan is or will be located in a community that is not participating in the National Flood Insurance Program. This means that the property is not eligible for Federal flood insurance. If the property is damaged by flooding in a federally declared disaster, Federal disaster relief assistance for the property will be unavailable if your community has been identified as a flood-prone area for one year or longer. Such assistance may be available only if, at the time the assistance would be approved, your community is participating in the National Flood Insurance Program or has been identified as a flood-prone area for less than one year.

The undersigned realizes that the property securing the loan described above is or will be located in an area identified as a flood hazard area and that the undersigned has received the required notice regarding Federal disaster relief assistance.

                                                                    Dated _____

Borrower  MICHAEL S CALLOWAY

                                                                    Dated _____

Borrower  CATHERINE L CALLOWAY

Bankers Systems, Inc., St. Cloud, MN 1-800-397-2341  Form FIN  6/22/92

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96_____, between the Creditor named below and __MICHAEL S CALLOWAY__ and __CATHERINE L CALLOWAY_____ (Consumer(s)).

---

### NOTICE OF RIGHT TO CANCEL
#### Your Right to Cancel
You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

#### How to Cancel
If you decide to cancel this transaction, you may do so by notifying us in writing, at

__Green Tree Financial Servicing Corporation__
(Name of Creditor)
__34387 PLYMOUTH__
__LIVONIA, MI  48150__
(Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __10/11/96__ (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

#### I WISH TO CANCEL

_____     _____
Consumer's Signature                  Date

---

### RECEIPT
Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at _____ __514 KING ST  LAUREL DE 19956____

Consumer(s):

Date _____

X _____
MICHAEL S CALLOWAY

X _____
CATHERINE L CALLOWAY

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATION OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated __10/09/96__, between the Creditor named below and __MICHAEL S CALLOWAY__ and __CATHERINE L CALLOWAY__ _____ (Consumer(s)).

**NOTICE OF RIGHT TO CANCEL**

**Your Right to Cancel**

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ __October 9, 1996_____ ; or

(2) the date you received your Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at

Green Tree Financial Servicing Corporation
                    (Name of Creditor)
34387 PLYMOUTH
LIVONIA, MI  48150
                    (Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the

notice no later than midnight of __10/11/96__
                                        (date)

(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____   _____
Consumer's Signature                    Date

---

**RECEIPT**

Each of the undersigned acknowledges receipt of 2 copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at _____ __514 KING ST  LAUREL DE 19956_____   Consumer(s):

Date _____

X _____
   MICHAEL S CALLOWAY

X _____
   CATHERINE L CALLOWAY

October 1, 2007

TransUnion Consumer Relations
PO Box 2000
Chester, PA 19022-2000

Dear TransUnion:

RE:     Michael S. Calloway              Catherine L. Calloway
        514 King Street                  514 King Street
        Laurel, DE 19956                 Laurel, DE 19956
        302-875-7561                     302-875-7561
        SSN: ██████████
        Birth Date: ██████
        File # ██████████

We have sent letters and made more phone calls than we can remember concerning the report of
Green Tree # 88037954 and Greentree #6700107318. As we have told you before this is the
same account. Green Tree decided to change the account number in 2005 to #88037954,
therefore that is the correct mortgage account. The account type should also be listed as
mortgage not installment

Greentree #6700107318 should show a balance of $0.

Please make this correction immediately.

Sincerely,

*Michael S. Calloway*

Michael S. Calloway

*Catherine L. Calloway*

Catherine L. Calloway

EXHIBIT E



**GREEN TREE #98037954**
345 SAINT PETER ST
SAINT PAUL, MN 55102-1211
(800) 423-9527

Balance: $91,250
Date Verified: 11/2007
High Balance: $114,640
Terms: 160 MONTHLY $1086

Pay Status: PAID OR PAYING AS AGREED
Account Type: INSTALLMENT ACCOUNT
Responsibility: JOINT ACCOUNT
Date Opened: 10/1996

Loan Type: SECURED

| Late Payments (26 months) | 30:60:90+ 0 0 0 | Last 26 months |
| --- | --- | --- |

| OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| oct | sep | aug | jul | jun | may | apr | mar | feb | '07 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb | '06 | dec | nov |

| OK | OK |
| --- | --- |
| oct | sep |

**GREENTREE #6700107318**
345 SAINT PETER ST
SAINT PAUL, MN 55102-1211
(800) 423-9527

Balance: $92,189
Date Verified: 10/2007
High Balance: $125,000
Terms: 240 MONTHLY $1086

Pay Status: PAID OR PAYING AS AGREED
Account Type: MORTGAGE ACCOUNT
Responsibility: JOINT ACCOUNT
Date Opened: 10/1996

Loan Type: CONVENTIONAL REAL ESTATE MTG

| Late Payments (48 months) | 30:60:90+ 0 0 0 | Last 48 months |
| --- | --- | --- |

| X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| sep | aug | jul | jun | may | apr | mar | feb | '07 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb | '06 | dec | nov | oct |

| X | X | X | OK | OK | OK | OK | OK | X | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | X | X | OK | OK | OK |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| sep | aug | jul | jun | may | apr | mar | feb | '05 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb | '04 | dec | nov | oct |

CATHERINE CALLOWAY

Jun 12 08 01:35p    Calloway

1-302-875-5378    p.5

Consumer Credit Report for MICHAEL STEVEN CALLOWAY

File Number:    170526761
Page:    5 of 12
Date Issued:    11/10/2007

TransUnion.

**GEMB/JCP** #2787143888
PO BOX 981402
EL PASO, TX 79998
(800) 542-0800

Balance:    $0
Date Updated:    10/2007
High Balance:    $549

Pay Status:    PAID OR PAYING AS AGREED
Account Type:    REVOLVING ACCOUNT
Responsibility:    JOINT ACCOUNT
Date Opened:    08/1995
Date Closed:    02/1998

Loan Type: CHARGE ACCOUNT
Remarks: ACCOUNT CLOSED BY CONSUMER

| Late Payments (48 months) | 30 | 60 | 90+ | Last 48 months | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 0 | 0 | | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |
| | | | | | sep | aug | jul | jun | may | apr | mar | feb | '07 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb | '06 | dec | nov | oct | | | | | | | |
| | | | | | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | | | | | | | |
| | | | | | sep | aug | jul | jun | may | apr | mar | feb | '05 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb | '04 | dec | nov | oct | | | | | | | |

**GEMB/SAM'S CLUB** #7714210639227940
PO BOX 981400
EL PASO, TX 79998
(800) 964-1917

Balance:    $739
Date Updated:    10/2007
High Balance:    $1,139
Credit Limit:    $1,150

Pay Status:    PAID OR PAYING AS AGREED
Account Type:    REVOLVING ACCOUNT
Responsibility:    INDIVIDUAL ACCOUNT
Date Opened:    06/2004

Loan Type: CHARGE ACCOUNT

| Late Payments (40 months) | 30 | 60 | 90+ | Last 40 months | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 0 | 0 | | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |
| | | | | | sep | aug | jul | jun | may | apr | mar | feb | '07 | dec | nov | oct | sep | aug | jul | jun | may | apr | mar | feb | '06 | dec | nov | oct |
| | | | | | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | | | | | | | | |
| | | | | | sep | aug | jul | jun | may | apr | mar | feb | '05 | dec | nov | oct | sep | aug | jul | jun | | | | | | | | |

MICHAEL CALLOWAY

*** 176442650-021 ***
P.O. Box 2000
Chester, PA 19022

11/10/2007    Trans**Union**.

P0E8ZY00202403-I032341
CATHERINE L. CALLOWAY
514 KING ST
LAUREL, DE 19956

Our investigation of the dispute you submitted is now complete. The results are listed below and a new copy of your credit report is enclosed.

If our investigation has not resolved your dispute, you may add a 100-word statement to your report. If you provide a consumer statement that contains medical information related to service providers or medical procedures, then you expressly consent to TransUnion including this information in every credit report we issue about you.

If there has been a change to your credit history resulting from our investigation, or if you add a consumer statement, you may request that TransUnion send an updated report to those who received your report within the last two years for employment purposes, or within the last one year for any other purpose.

If interested, you may also request a description of how the investigation was conducted along with the business name, address and telephone number of any company we may have contacted for information.

Thank you for helping ensure the accuracy of your credit information.

## Investigation Results

| ITEM | DESCRIPTION | RESULTS |
|------|-------------|---------|
| GREEN TREE | # 88037954 | NEW INFORMATION BELOW |
| GREENTREE | # 6700107318 | NEW INFORMATION BELOW |

Any corrections to your identification requested by you have been made, and are included in the following credit report.

1/05/26761-019 ***
P.O. Box 2000
Chester, PA 19022



11/10/2007    Trans**Union.**

P0E8ZY00202862-1039911
MICHAEL STEVEN CALLOWAY
514 KING ST
LAUREL, DE 19956

Our investigation of the dispute you submitted is now complete. The results are listed below and a
new copy of your credit report is enclosed.

If our investigation has not resolved your dispute, you may add a 100-word statement to your report. If
you provide a consumer statement that contains medical information related to service providers or
medical procedures, then you expressly consent to TransUnion including this information in every
credit report we issue about you.

If there has been a change to your credit history resulting from our investigation, or if you add a
consumer statement, you may request that TransUnion send an updated report to those who received
your report within the last two years for employment purposes, or within the last one year for any other
purpose.

If interested, you may also request a description of how the investigation was conducted along with
the business name, address and telephone number of any company we may have contacted for
information.

Thank you for helping ensure the accuracy of your credit information.

## Investigation Results

| ITEM | DESCRIPTION | RESULTS |
|------|-------------|---------|
| GREEN TREE | # 88037954 | NEW INFORMATION BELOW |
| GREENTREE | # 8700107318 | NEW INFORMATION BELOW |

Any corrections to your identification requested by you have been made, and are
included in the following credit report.



EXHIBIT G



| Annual...Report.com | ▶ Return to AnnualCreditReport.com | ▶ Frequently Asked Questions | ▶ Contact AnnualCreditReport.com |

...Union

## Personal Credit Report
CATHERINE LEE CALLOWAY
Source: TransUnion

August 18, 2008
Available until Sep 17, 2008

🖶 Display a printer friendly version
💬 Found an inaccuracy? Click to learn about correcting

See important legal notice at the end of your report.

Catherine, remember to...

**Get your credit score + tips for making it higher.**

**View your debt analysis.**

3.5% 30yr fix mortgage

Credit Card in Seconds!

Capital One Apply Now!

### Personal Information

**File Number:** 194128037
**Date Issued:** 08/18/2008

| | | | |
|---|---|---|---|
| **Name:** | CATHERINE LEE CALLOWAY | **SSN:** | XXX-XX-4126 |
| | | **Date of Birth:** | 01/1952 |
| You have been on our files since 09/1974 | | **Telephone:** | 875-7561 |
| | | Your SSN is partially masked for your protection | |

### CURRENT ADDRESS

**Address:** 514 KING ST.
LAUREL, DE 19956

**Date Reported:** 03/1996

### PREVIOUS ADDRESSES

**Address:** 1 RR 1 BOX 271A2
LAUREL, DE 19956

**Date Reported:** 04/1995

### EMPLOYMENT DATA REPORTED

**Employer Name:** ~~DISABILITY~~
**Date Reported:** 12/2005

**Position:**
**Date Hired:**

**Employer Name:** DISABILITY
**Date Reported:** 05/2004

**Position:**
**Date Hired:**

Special Notes: Your Social Security number has been masked for your protection. You may request disclosure of the full number by writing to us at the address found at the end of this report. Also if any item on your credit report begins with 'MED1', it includes medical information and the data following 'MED1' is not displayed to anyone but you except where permitted by law.

### Account Information

The key to the right helps explain the payment history information contained in some of the accounts below. Not all accounts will contain payment history information, but some creditors report how you make payments each month in relation to your agreement with them.

| N/A | X | | | | | |
|---|---|---|---|---|---|---|
| Not Applicable | Unknown | Current | 30 days late | 60 days late | 90 days late | 120 days late |

### Satisfactory Accounts

Aug 18 08 11:05a     Calloway
TransUnion

## GREEN TREE #88037954

345 SAINT PETER ST
SAINT PAUL, MN 55102-1211
(800) 423-9527

| | | | |
|---|---|---|---|
| Balance: | $68,171 | Pay Status: | Paid or Paying as Agreed |
| Date Updated: | 07/2008 | Account Type: | Installment Account |
| High Balance: | $114,649 | Responsibility: | Joint Account |
| Past Due: | $0 | Date Opened: | 10/1996 |
| Terms: | $1,086 for 160 months | | |

Loan Type: Secured

Late Payments
33 months       Last 33
                Months

0    0    0

## GREENTREE #6700107318

345 SAINT PETER ST
SAINT PAUL, MN 55102-1211
(800) 423-9527

| | | | |
|---|---|---|---|
| Balance: | $90,874 | Pay Status: | Paid or Paying as Agreed |
| Date Verified: | 01/2008 | Account Type: | Mortgage Account |
| High Balance: | $125,000 | Responsibility: | Joint Account |
| Past Due: | $0 | Date Opened: | 10/1996 |
| Terms: | $1,086 for 240 months | | |

Loan Type: Conventional Real Estate Mtg

Late Payments
48 months       Last 46
                Months

0    0    0

USAF ROSFOV DEPT #114001333

| Annual Credit Report.com | Return to AnnualCreditReport.com | Frequently Asked Questions | Contact AnnualCreditReport.com |

Union

## Personal Credit Report
MICHAEL STEVEN CALLOWAY
Source: TransUnion

August 18, 2008
Available until Sep 17, 2008

Display a printer friendly version
Found an inaccuracy? Click to learn about correcting

See important legal notice at the end of your report.

Michael, remember to...

Get your
credit score +
tips for making
it higher.

View your debt
analysis.

Capital One
Card Lab
Credit Card
In Seconds!
Capital One
Apply Now!

### Personal Information

**File Number:** 170526761
**Date Issued:** 08/18/2008

**Name:** MICHAEL STEVEN CALLOWAY

You have been on our files since 09/1974

**SSN:** XXX-XX-6462
**Date of Birth:** 11/1952

**Telephone:** 875-7561

Your SSN is partially masked for your protection

### CURRENT ADDRESS
**Address:** 514 KING ST,
LAUREL, DE 19956

**Date Reported:** 08/1995

### PREVIOUS ADDRESSES
**Address:** 1 RR 1 BOX 271A2
LAUREL, DE 19956

**Date Reported:** 06/1995

### EMPLOYMENT DATA REPORTED
**Employer Name:** ALLEN FAMILY FOODS
**Date Verified:** 10/2007

**Employer Name:** RETIRED & SELF EMPLOYED
**Date Verified:** 01/2007

**Employer Name:** SELF
**Date Reported:** 08/2006

**Employer Name:** MUNDY COMPANIES
**Date Reported:** 12/2005

**Position:** SAFETY MANAGER
**Date Hired:**

**Position:**
**Date Hired:**

**Position:**
**Date Hired:**

**Position:**
**Date Hired:**

Special Notes: Your Social Security number has been masked for your protection. You may request disclosure of the full number by writing to us at the address found at the end of this report. Also if any item on your credit report begins with 'MED1', it includes medical information and the data following 'MED1' is not displayed to anyone but you except where permitted by law.

### Account Information

The key to the right helps explain the payment history information contained in some of the accounts below. Not all accounts will contain payment history information, but some creditors report how you make payments each month in relation to your agreement with them.

| N/A | X | ? | Current | 30 days late | 60 days late | 90 days late | 120 days late |
| Not Applicable | Unknown | | | | | | |

**GREEN TREE** #88037954

345 SAINT PETER ST
SAINT PAUL, MN 55102-1211
(800) 423-9527

| Balance: | $88,171 |
| Date Updated: | 07/2008 |
| High Balance: | $114,649 |
| Past Due: | $0 |
| Terms: | $1,086 for 160 months |

| Pay Status: | Paid or Paying as Agreed |
| Account Type: | Installment Account |
| Responsibility: | Joint Account |
| Date Opened: | 10/1996 |

Loan Type: Secured

Late Payments
34 months

Last 34
Months

jun may apr mar feb '08 dec nov oct sep aug jul jun may apr mar feb '07 dec nov oct sep aug jul
jun may apr mar feb '06 dec nov oct sep

0   0   0

**GREENTREE** #6700107318

345 SAINT PETER ST
SAINT PAUL, MN 55102-1211
(800) 423-9527

| Balance: | $92,183 |
| Date Updated: | 10/2007 |
| High Balance: | $125,000 |
| Past Due: | $0 |
| Terms: | $1,086 for 240 months |

| Pay Status: | Paid or Paying as Agreed |
| Account Type: | Mortgage Account |
| Responsibility: | Joint Account |
| Date Opened: | 10/1996 |

Loan Type: Conventional Real Estate Mtg

Late Payments
48 months

Last 48
Months

X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X
sep aug jul jun may apr mar feb '07 dec nov oct sep aug jul jun may apr mar feb '06 dec nov oct
X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X   X
sep aug jul jun may apr mar feb '05 dec nov oct sep aug jul jun may apr mar feb '04 dec nov oct

0   0   0

# AFFIDAVITS

## AFFIDAVIT

I, CATHERINE CALLOWAY, do hereby swear and depose that I am the Plaintiff in this action. I hereby state that I filed this complaint in good faith and for the purposes set out therein, and the facts are accurate to the best of my knowledge, information, and belief based on the information available to me.

_Catherine Calloway_

Catherine Calloway

SWORN AND SUBSCRIBED BEFORE ME THIS _21_ day of _AUGUST_ 2008.

_Cynthia L Piazzo_

NOTARY PUBLIC

CYNTHIA L. PIAZZA
MY COMMISSION
EXPIRES
AUG 24, 2011
NOTARY PUBLIC
STATE OF DELAWARE

## AFFIDAVIT

I, MICHAEL CALLOWAY, do hereby swear and depose that I am the Plaintiff in this action. I hereby state that I filed this complaint in good faith and for the purposes set out therein, and the facts are accurate to the best of my knowledge, information, and belief based on the information available to me.

_Michael J. Calloway_

Michael Calloway

SWORN AND SUBSCRIBED BEFORE ME THIS _21st_ day of _August_ 2008.

_Connie J. Lewis_

NOTARY PUBLIC

*(Notary seal: CONNIE F. LEWIS — MY COMMISSION EXPIRES JAN 24, 2012 — NOTARY PUBLIC STATE OF DELAWARE)*

JS 44 (Rev. 12/07) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

CATHERINE AND MICHAEL CALLOWAY, 514 KING STREET LAUREL DE 1156

**(b)** County of Residence of First Listed Plaintiff  SUSSEX, DE
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

MAGGIE CLAUSELL, 9 E LOOCKERMAN ST.STE 205 DOVER, DE 302-678-7644

**DEFENDANTS**

GREEN TREE SERVICING LLC 332 MINNESOTA ST. ST PAUL MN 55101

County of Residence of First Listed Defendant  RAMSEY COUNTY MN
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☒ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC § 1681 ET SEQ

Brief description of cause:
VIOLATION OF THE FCRA

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions):  JUDGE  SUE L. ROBINSON  DOCKET NUMBER  08-224

DATE  August 26, 2008

SIGNATURE OF ATTORNEY OF RECORD  M Clausell #4532

**FOR OFFICE USE ONLY**

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG. JUDGE

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 8 - 5 5 2 _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___ *2* ___ COPIES OF AO FORM 85.

_____8/29/08_____
(Date forms issued)

X_____
(Signature of Party or their Representative)

X___ Maggie R Clausell
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action